## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CATHOLIC DIOCESE OF PEORIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-1276 |
| | ) | |
| KATHLEEN SEBELIUS, in her official capacity as | ) | |
| Secretary of the U.S. Department of Health and Human | ) | |
| Services, HILDA SOLIS, in her official capacity as | ) | |
| Secretary of the U.S. Department of Labor, TIMOTHY | ) | |
| GEITHNER, in his official capacity as Secretary of the | ) | |
| U.S. Department of Treasury, U.S. DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, U.S. | ) | |
| DEPARTMENT OF LABOR, and U.S. DEPARTMENT | ) | |
| OF TREASURY, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER and OPINION**

**Facts**

The Plaintiff, Catholic Diocese of Peoria ("Diocese"), is a community of Roman Catholic parishes, schools, and outreach organizations, guided by Bishop Daniel R. Jenky, that not only provides pastoral care and spiritual guidance for nearly 250,000 Catholics in and around Peoria, Illinois, but also serves individuals without regard to their religion through its schools and charitable programs. The Diocese carries out its mission both on its own and through the work of its affiliated corporations.

Defendants are departments, officials, and executives of the United States. They are the U.S. Department of Health and Human Services ("HHS"), Kathleen Sebelius in her official capacity as Secretary of HHS, the U.S. Department of Labor ("DOL"), Hilda L. Solis in her official capacity as Secretary of DOL, U.S. Department of Treasury, and Timothy F. Geithner in his official capacity as Secretary of Treasury. Collectively, Defendants are the departments and officials responsible for adopting, administering, and enforcing the regulations to which the Diocese objects.

The Diocese claims that, pursuant to the Patient Protection and Affordable Care Act ("ACA"), Defendants have promulgated various rules related to preventive care ("Rules") that

force the Diocese to violate its sincerely held religious beliefs by requiring them to provide health plans to their employees that include and/or facilitate coverage for abortion-inducing drugs, sterilization and contraception.

The Diocese operates a self-insured and self-funded health plan. That is, the Diocese does not contract with a separate insurance company that provides health care coverage to its employees. Instead, the Diocese itself functions as the insurance company underwriting its employees' medical costs. Consistent with Church teachings, this plan does not cover abortion-inducing drugs, sterilization, or contraceptives. In limited circumstances, the Diocese's pharmacy carrier can override the exclusion of certain sterilization procedures or drugs commonly used as contraceptives if a physician certifies that they were prescribed with the intent of treating certain medical conditions, not with the intent to prevent pregnancy. The Diocese's plan is administered by a third-party administrator, Humana.

The Diocese acknowledges that they are a "grandfathered" health plan and exempt from the preventive care requirements of ACA, but states that such plans cannot undergo substantial change after March 23, 2010, for fear of losing their grandfathered status.

This case is one of forty (40) lawsuits which challenge the ACA's preventive services regulations regarding their requirements relating to contraception. [1]

---

[1] Opinions have been issued in at least ten (10) cases, and one case has been addressed on the appellate level:

(i) in four cases, the defendants' motion to dismiss was granted on the issues of standing and ripeness, to wit: *State of Nebraska v. Sebelius*, ___ F.Supp.2d ___, 2012 WL 2913401 (D. Neb. July 17, 2012), appeal docketed, No. 12-3238 (8th Cir. Sept. 25, 2012); *Belmont Abbey College v. Sebelius*, ___ F.Supp.2d ___, 2012 WL 2914417 (D.D.C. July 18, 2012), appeal docketed, No. 12-5291 (C.A.D.C. Sept. 20, 2012); and *Wheaton College v. Sebelius*, ___ F.Supp.2d ___, 2012 WL 3637162 (D.D.C. August 24, 2012), *affirmed as to dismissal for lack of ripeness*, No. 12-5273 (C.A.D.C. Dec. 18, 2012); *Zubik v. Sebelius*, No. 12-00676 (W.D.Pa. Nov. 27, 2012); in a fifth case, the defendants' motion to dismiss was granted solely on the issue of ripeness, *Catholic Diocese of Biloxi, Inc., v. Sebelius*, No. 12-158 (S.D.Ms., Dec. 26, 2012).

(ii) in another, the defendants' motion to dismiss was granted on the merits, *O'Brien v. United States Department of Health and Human Services*, ___ F.Supp.2d ___, 2012 WL 4481208 (E.D. Mo., Sept. 28, 2012), appeal docketed, No. 12-3357 (8th Cir. Oct. 4, 2012);

(iii) in two others, plaintiffs' motion for preliminary injunction was granted: *Newland v. Sebelius*, ___ F.Supp.2d ___, 2012 WL 3069154 (D. Colo. July 27, 2012), appeal docketed, No. 12-1380 (10th Cir. Sept. 26, 2012) and *Tyndale House Publishers v. Sebelius*, ___ F. Supp.2d ___, 2012 WL 5817323 (D.D.C. Nov. 16, 2012);

(iv) in one other, the plaintiffs' motion for preliminary injunction was granted as to the individual and the for-profit secular plaintiffs, but the district court found that the non-profit organization plaintiff did not have standing: *Legatus v. Sebelius*, ___ F. Supp.2d ___, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); and

(v) in one other, the plaintiff's motion for preliminary injunction was denied as the court found that corporations did not have protected rights under the Free Exercise Clause and that the individual plaintiffs did not show a likelihood of success on the merits as to either their free exercise or RFRA claims. *Hobby Lobby Stores, Inc.*

The ACA, signed into law on March 23, 2010, instituted a variety of health care reforms. Relevant to this lawsuit, the ACA requires group health care plans provide no-cost coverage for "preventive care' and screening for women. 42 U.S.C. 300gg-13(a)(4). The ACA did not, however, specifically define "preventive care" and delegated that to the Health Resources and Services Administration ("HRSA"), an agency of HHS. On August 1, 2011, HRSA issued guidelines that defined the scope of women's preventive services. As set forth above, the preventive care coverage requirements do not apply to grandfathered health plans, and certain religious employers are exempt from any requirement to provide coverage for contraceptive services.

On February 10, 2012, and as clarified on August 15, 2012, final regulations concerning religious organizations were posted and HHS established a temporary enforcement "safe-harbor" for group health plans with religious objections to contraceptive coverage that do not qualify for the religious employer exemption. During this safe harbor period, Defendants will not take any enforcement action against any employer or group health care plan with respect to a non-grandfathered plan that fails to cover some or all of the recommended contraceptive services. The safe harbor provides an additional year for these group health plans to comply with HRSA guidelines regarding contraceptive coverage.

On March 21, 2012, Defendants announced their intentions to propose amendments that "would establish alternative ways to fulfill the requirements of the ACA while still protecting religious organizations from having to contract, arrange, or pay for contraceptive coverage. 77 Fed. Reg. 16,501, 16,503. The Defendants now seek dismissal of the complaint pursuant to 12(b)(1) arguing lack of jurisdiction, specifically on the issue of standing and ripeness.

**Standard of Review- Motion to Dismiss**

Courts have traditionally held that a complaint should not be dismissed unless it appears from the pleadings that the plaintiff could prove no set of facts in support of her claim which would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41 (1957); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 (7th Cir. 1993). Rather, a complaint should be construed broadly and liberally in conformity with the mandate in Federal Rules of Civil Procedure 8(f). More recently, the Supreme Court has phrased this standard as requiring a showing sufficient "to raise a right to relief beyond a speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Furthermore, the claim for relief must be "plausible on its face." *Id.*; *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1953 (2009).

---

*v. Sebelius*, ___ F. Supp.2d ___, 2012 WL 5844972 (W.D. Okla. Nov. 19, 2012), appeal docketed, No. 12-6294 (10th Cir. Nov. 20, 2012).

For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff; its well-pleaded factual allegations are taken as true, and all reasonably-drawn inferences are drawn in favor of the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Hishon v. King & Spalding*, 467 U.S. 69 (1984); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467 (7th Cir. 1997); *M.C.M. Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 969 (7th Cir. 1995); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75 (7th Cir. 1992).

A motion to dismiss pursuant to Rule 12(b)(1) asserts that the district court lacks subject-matter jurisdiction. This type of motion is either "facial", that is, one which attacks the complaint on its face, or "factual," where the defendant challenges the truth of the jurisdictional allegations. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 443-444 (7th Cir. 2009). When a motion to dismiss pursuant to Rule 12(b)(1) is filed prior to the defendant filing an answer to the complaint, it is, by definition, a facial attack, and the Court must accept all well-pleaded factual allegations as true. *Id.* The Diocese has the burden of establishing that jurisdiction is timely and proper in this Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

## Analysis

Defendants have moved to dismiss on standing and ripeness grounds. Because Defendants' claims go to the Court's jurisdiction, the Court must consider them first. As such, nothing in this Order should be construed as addressing the merits of the Diocese's Complaint.

## Standing

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," and establishes who has a right to bring a suit. *Id.*, at 560. To meet its burden to establish standing, a plaintiff must demonstrate that it has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.*, at 561. In other words, "Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison v. YTB Intern. Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

Defendants maintain that the Diocese fails to meet this standard for three reasons. First, the preventive services regulations do not apply to plans that are "grandfathered," which the Diocese undisputedly is. Second, even if the Diocese amends its plan to the point of no longer being "grandfathered," the safe-harbor provisions render the threatened harm from the contraceptive coverage regulation too remote to constitute "imminent," and that the "underlying purpose of the imminence requirement is to ensure that the court in which suit is brought does not render an advisory opinion in 'a case in which no injury would have occurred at all.'"

*Animal Legal Def. Fund, Inc. v. Espy*, 23 F3d 496, 500 (D.C. Cir. 1994). Third, Defendants contend that any enforcement after the safe harbor expires is purely speculative.

The Diocese responds that an injury in the First Amendment context can take many forms and need not be economic. *See Family & Children's Ctr., Inc. v. Sch. City of Mishawaka*, 13 F.3d 1052, 1058 (7th Cir. 1994). Additionally, the Diocese maintains that a future injury suffices if it is "certainly impending," and "all that a plaintiff need show…is a reasonable probability-not a certainty-of suffering tangible harm." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 190 (2000); *Hoover v.Wagner*, 47 F.3d 845, 847 (7th Cir. 1995).

The Diocese argues that the ACA and its narrow definition of "religious employer" require it to violate its religious beliefs to comply with the ACA or its exemption and at the same time, expose it to various penalties if it fails to abide, requiring this Court to address pre-enforcement litigation. The Diocese further contends that it is restricted from making alterations to its health plans, or it will lose its grandfathered status. Defendants counter that, in light of the forthcoming amendments and the opportunity for the Diocese to help shape those amendments, there is no reason to suspect that the Diocese will ever be required to sponsor a health plan that covers contraceptive services in contravention of its religious beliefs once the safe harbor expires and that any suggestion to the contrary is entirely speculative at this point.

At issue then is whether the Diocese has alleged an injury in fact. In *Whitmore v. Arkansas*, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), the Supreme Court stated: "We have said many times before and reiterate today: Allegations of possible future injury do not satisfy the requirements of Article III. A threatened injury must be certainly impending to constitute injury in fact."

The Diocese has "grandfathered" status and does not face an impending government enforcement action. The Diocese contends that the mandate is currently impeding its health care decisions, because it is locked into providing unchanged health care plans or it will lose its grandfathered status. The Diocese further points out that if it does make changes to its plans, the mandate will impede its ongoing planning of its 2013-14 budget, as any fines that might be imposed for non-compliance must be allocated within those budgets. It argues that these present impacts distinguish it from other cases decided around the country.

Numerous cases support the Diocese's assertion that a future injury's present effect on the ability to plan future operations or the legal risks that a plaintiff would incur in planning not to comply with future law may be enough of an "impending injury" to provide a basis for standing. On this issue, the Diocese's argument is well taken. What causes the argument more difficulty, in this case, is that this matter starts not with the safe harbor, but with the undisputed

fact that the Diocese, as it is currently situated, is grandfathered and therefore exempt from application of the ACA.

The discussion about the safe harbor occurs only if the Diocese (1) decides to change its plan and (2) by doing so, loses its grandfathered status. A plan does not lose its grandfathered status merely because the plan or its sponsor enters into a new policy, certificate, or contract of insurance after March 23, 2010. 45 C.F.R. § 147.140(a)(1)(i). So in this instance, the Diocese would cease to be grandfathered by its own choosing. However, the Diocese has not taken the position that there are any specific and non-hypothetical changes that it is refraining from making to its plan because of the ACA. It seems to go without saying that under the current climate, anyone with a grandfathered plan would not reasonably consider a change until after the proposed amendments to these regulations have been finalized – a reality that would be obvious to the Diocese.

While the Court finds that under certain circumstances, a grandfathered plan could still have standing to challenge the provisions of the ACA, the issue of standing need not be definitively resolved here. Even assuming that the Diocese has standing, the Court finds that the questions presented are not yet ripe for review.

## Ripeness

Four recent decisions from district courts have addressed this issue and found plaintiffs' claims lack ripeness. S*ee Wheaton College*, 2012 WL 3637162 (D.D.C.), *affirmed in relevant part,* No. 12-5273 (C.A.D.C. Dec. 18, 2012)*, Catholic Diocese of Nashville* , civil case no. 3-12-0934, *Zubik*, No. 12-00676 (W.D.Pa. Nov. 27, 2012), and *Catholic Diocese of Biloxi, Inc.,* No. 12-158 (S.D.Ms., Dec. 26, 2012).

It is well-settled that the existence of a case or controversy is a prerequisite for the exercise of federal jurisdiction. *Sprint Spectrum v. City of Carmel, Indiana*, 361 F.3d 998, 1002 (7th Cir. 2004). Ripeness is one element of the case or controversy analysis that determines when a party can bring suit and is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026 (2003); *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-48, 87 S.Ct. 1507 (1967). In determining whether an action is ripe for review, courts must consider both the fitness of the issues for judicial decision and the hardship to the parties if consideration is withheld. *National Park Hospitality Association*, 583 U.S. at 808.

"A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" or where "the possibility that further consideration will actually occur before [implementation] is not theoretical but real." *Texas v.*

*United* States, 523 U.S. 296, 300 (1998); *Full Value Advisors v. S.E.C.*, 633 F.3d 1101, 1107 (D.C.Cir. 2011). The Government has stated that it will not enforce the preventive services provisions in their current form and will issue a new rule that addresses concerns like those of the Diocese prior to August 2013. This Court joins other district courts and the Court of Appeals for the District of Columbia in taking these representations to be a binding commitment. The Court therefore finds that as the Government is in the process of amending the preventive service regulations, those regulations are not fit for judicial review at this time. To do so would undermine the interests of judicial economy requiring the Court to review the Rule before it is amended and before it is to be enforced.

Additionally, the regulations the Diocese challenges are being amended precisely in order to accommodate the concerns of the Diocese. *Wheaton,* 2012 WL 3637162, at 10; *see also, AT&T Corp. v. FCC,* 369 F.3d. 554, 563 (D.C. Cir., 2004). As set forth in Defendants' motion, the forthcoming amendments are intended to address the very issue that Plaintiff raises here by establishing an alternative means of providing contraceptive coverage without cost-sharing while accommodating religious organizations' religious objections to covering contraceptive services. Thus, the Court concludes that the claims in this case rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," and do not "require[] immediate and significant change in the plaintiff['s] conduct of [its] affairs" in light of Plaintiff's grandfathered status and the safe harbor. *Texas*, 523 U.S. at 300; *Abbott Laboratories*, 387 U.S. at 153. The claims of the Diocese are therefore not ripe for consideration.

## Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss [9] on jurisdictional grounds is granted. This matter is now dismissed without prejudice as premature. If its concerns are not resolved to its satisfaction through the amendment process, the Diocese will have the opportunity to challenge the amended regulations when the alleged harm is not contingent on future events and is less speculative. *See Korte v. Sebelius*, Case No. 12-3841 Doc. 15, (7th Cir. Dec. 28, 2012) (entering preliminary injunctive relief in favor of employer who was neither grandfathered nor exempt given a showing of imminent and irreparable harm.)

ENTERED this 3rd day of January, 2013.

> s/ James E. Shadid
> James E. Shadid
> Chief United States District Judge